IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NINA SHAHIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 10-956-LPS |
| | : | |
| STATE OF DELAWARE and OFFICE OF | : | |
| MANAGEMENT AND BUDGET, | : | |
| | : | |
| Defendants. | : | |

Nina Shahin, Pro Se, Dover, Delaware.

    Plaintiff.

Aaron R. Goldstein and Laura L. Gerard, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware.

    Attorneys for Defendants.

**MEMORANDUM OPINION**

September 18, 2013
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Nina Shahin ("Plaintiff") filed this action against Defendants the State of Delaware ("the State") and Office of Management and Budget ("OMB") ("together Defendants") alleging employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 629, *et seq.* (D.I. 2) The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Presently before the Court are the parties' cross-motions for summary judgment (D.I. 71, 73), as well as Plaintiff's motion to hold witness D. Davis in contempt (D.I. 56) and motion for sanctions (D.I. 77). For the reasons that follow, the Court will grant Defendants' motion and will deny Plaintiff's motions.

## II. PROCEDURAL BACKGROUND

Plaintiff's charge of discrimination, dated April 6, 2009, asserts that Defendants discriminated against her by reason of national origin (Ukrainian) and age (over 40), and retaliated against her for previously filing a charge of discrimination, when they did not interview or hire her for the position of financial investment program specialist. (D.I. 2 Ex.) The charge states that there was no further contact after Plaintiff received a letter that her application had been received and she met qualifications. The notice of right to sue is dated September 15, 2010, and Plaintiff filed her complaint on November 9, 2010.

The Complaint alleges that "OMB failed to notify [Shahin] of the results of her application for the position of financial investment program specialist . . . because [Shahin]

1

spearheaded her husband's correspondence with the OMB about violations of the provisions of federal law regarding his pension plan with the State of Delaware at that time." (*Id.* at ¶ 10)

On January 9, 2012, the Court entered a Scheduling Order and later, on October 9, 2012, amended the deadlines, setting a discovery deadline of December 31, 2012 and a dispositive motion deadline of January 13, 2012. (D.I. 18, 50) Plaintiff sought to depose several individuals as part of the discovery process, including Demetrius Davis ("Davis"), a former employee of the State of Delaware. Shahin was unsuccessful in her attempts to subpoena Davis to appear for her deposition and filed a motion (D.I. 56) to hold Davis in contempt of court pursuant to Fed. R. Civ. P. 45(e). In the meantime, the parties filed cross-motions for summary judgment. (D.I. 71, 73) Next, on February 28, 2013, Shahin filed a motion for sanctions (D.I. 77) pursuant to Fed. R. Civ. P. 11(b) against defense counsel for "lying to Court, misrepresenting facts and circumstances related to the Plaintiff's application and her qualifications related to the position of financial investment program specialist and filing their motion for summary judgment without having any proper factual or legal basis with a sole intention to harass and intimidate the Plaintiff which is the act of discrimination by definition."

## III. FACTUAL BACKGROUND

In October 2008, the Office of the State Treasurer advertised an opening for the position of financial investment program specialist, with a closing date of October 30, 2008. (D.I. 72 Ex. E at Visalli Ex. 1; D.I. 75 Ex. A2) The position was summarized as "responsible for the daily administration of the State's Defined Contribution Plans, the 457 Deferred Compensation Plan and the 403b Plan." (*Id.*) The announcement stated that applicants must have education, training and/or experience demonstrating competence in each of the following areas: (1) experience in

2

financial analysis, which includes compiling, analyzing and interpreting financial data to ensure effective and efficient accounting of funds or to make projections for financial planning; (2) experience in presenting or facilitating workshops, seminars or educational sessions; (3) experience in interpreting laws, rules, regulations, standards, policies, and procedures for defined contribution plans such as 457, 403(b), or 401(a); (4) experience in using an automated financial management information system to enter, update, modify, delete, retrieve/inquire, and report on data; and (5) knowledge of investment options and methods. (*Id.*)

During the relevant time period, Ann Visalli ("Visalli") held the position of Deputy/ Principal Assistant with a working title of Deputy Treasurer.[1] (D.I. 72 Ex. E at 2) Visalli explained the selection process as follows: "when a position becomes vacant, there's a request made by the hiring agency. In this case it would be the Treasurer's Office, and I would approve that request to fill the position. The position is posted; people apply for the position. The HR section of the OMB reviews applicants for qualifications and nonqualifications, and typically will give you a list of thirty or so candidates that meet the minimum qualifications for the job. Then we, meaning the Treasurer's Office, would receive a list of candidates and we would schedule some level of interviews based on the applications that we received." (D.I. 72 Ex. E at 3- 4; D.I. 75 Ex. at A19-20) Not all candidates that meet the minimum qualifications are interviewed. (D.I. 72 Ex. E at 9; D.I. 75 Ex. A22)

Shahin applied for the position on October 30, 2008. (D.I. 75 Ex. A2; D.I. 77 Ex. A) Shahin has two Master of Science degrees, one in taxation and one in accounting. (D.I. 14 Ex.

---

[1]At the time of her deposition, Visalli held the position of the Director of the Office of Management and Budget for the State of Delaware. (D.I. 72 Ex. E at 2)

3

A) Davis screened the applications and Shahin's name was placed on the certification list for the position. (D.I. 72 Ex. J at Ex. 3; D.I. 74 Ex. A2) Toward the middle to the end of November, 2008, several names, including Shahin's, were forwarded to the attention of the Office of the Treasurer for review. (D.I. 75 Ex. A2)

During this time, Leighann Hinkle ("Hinkle") held the position of Director of Defined Contribution Plans with a working title of Human Resource Manager.[2] (D.I. 72 Ex. F at 2, 5; D.I. 75 Ex. A11, A13) When candidates' applications are evaluated, they are compared on a number of factors, not one alone, and are compared to other applications in the pool. (D.I. 72 Ex. E at 9; D.I. 75 Ex. A21) Hinkle reviewed the certification list and selected a number of applicants who had best demonstrated sufficient similar and relevant prior work experience for the position. (D.I. 72 Ex. F at 7; D.I. 75 Ex. A2, A15) Hinkle's selection process included reviewing the application and looking at current job experience to determine if it would be relevant for the day-to-day activities of the job vacancy. (D.I. 72 Ex. F at 8; D.I. 75 Ex. A16) Hinkle stated that, "in order to be qualified for a job, you have to meet the job requirements." (*Id.*)

Shahin was not selected for an interview, although Hinkle has no specific recollection of Shahin's non-selection. (D.I. 72 Ex. F at 7; D.I. 75 Ex. A2, A15) There were other individuals on the certification list who were not selected by Hinkle for an interview. (D.I. 75 Ex. A1-A2) The Office of the State Treasurer selected five individuals to interview, three male and two females. (D.I. 20 Answer to Interrog. 4) Candidates are brought in for interviews in priority order. (D.I. 72 Ex. E at 9; D.I. 75 Ex. A21)

---

[2]Hinkle did not supervise Davis, who worked in a different agency. (D.I. 72 Ex. F at 2)

4

Hinkle was unaware of Shahin's Ukrainian descent at the time she made the decision that Shahin would not be interviewed. (D.I. 75 Ex. A3) The State of Delaware does not collect information on the national origin of applicants. Nor was Hinkle aware that Shahin "had previously filed Equal Employment complaints of any kind." (D.I. 75 Ex. A3 at ¶ 10) In addition, according to Hinkle, Shahin's gender had no bearing on the decision not to include her in the interview process. (*Id.* at ¶ 11)

Visalli participated in the interview process, as did Hinkle and Jill Ipnar ("Ipnar"), who held the position of Human Resources Manager II.[3] (D.I. 72 Ex. E at 4; Ex. G at 2; Ex. J at Ex. 3; D.I. 75 Ex. A20) Visalli had a role in the approval of the final candidate, and approved all the final paperwork for the hire. (D.I. 72 Ex. E at 3; D.I. 75 Ex. A19) Visalli did not recall seeing Shahin's application. (D.I. 72 Ex. E at 9; D.I. 75 Ex. A22)

Gary Scheidecker ("Scheidecker"), a 42 year old white male of United States of America national origin was hired for the position of financial investment program specialist. (D.I. 20 Answer to Interrog. 1; D.I. 72 Ex. A at 2; D.I. 75 Ex. A23) He held the position from December 29, 2008 until September 2012. (D.I. 75 Ex. A28) Scheidecker has a degree in public service, had taken accounting classes, and had fifteen years of experience in financial services at the time he was hired. (D.I. 72 Ex. A at 6; D.I. 75 Ex. A27, A30-46) He also held a number of securities licenses – including a Series 7 License – which were directly applicable to the job; and, during his career, he had performed almost the same functions as those necessary for the available position. (D.I. 75 Ex. A20, A28) Scheidecker explained that while he had no experience in the taxation of pension plans, it was not required for the position for which he was hired, as the

---

[3]Ipnar was not involved in the selection of candidates. (D.I. 72 Ex. G at 2)

5

position had nothing to do with pensions but, rather, involved 403(b) defined contribution plans. (D.I. 72 Ex. A at 3, 5; D.I. 75 Ex. A23, A26) According to Visalli, who approved the selected candidate, Scheidecker was "a very highly qualified candidate" based upon his specific work experience. (D.I. 20 Answer to Interrog. 9; D.I. 72 Ex. E at 5; 75 Ex. A20)

Hinkle was involved in an automated letter campaign that advised State of Delaware employees of a change in federal regulations and the need for compliance with the regulations. (D.I. 75 Ex. A2) Shahin's husband, Dr. Mazen Shahin ("Dr. Shahin"), was the recipient of an automated letter. As a result, Dr. Shahin and Hinkle engaged in email correspondence regarding the initial letter. (D.I. 72 Ex. B; D.I. 75 Ex. A3-A9) The exchange of correspondence took place from December 1, 2008 through December 19, 2008. (D.I. 72 Ex. F at Hinkle Ex. 1) Hinkle was unaware that Dr. Shahin was married to Plaintiff. (D.I. 75 Ex. A4) In August 2008, prior to the initiation of the automated letter campaign, Dr. Shahin had exchanged emails with the Delaware Pension Administrator regarding questions about his 401(k). (D.I. 72 Ex. B)

## IV. MISCELLANEOUS MOTIONS

### A. Contempt

Shahin wished to depose Davis, who had screened all applications and selected candidates who would be interviewed for the position of financial investment program specialist. (D.I. 72 Ex. H at 2) Davis is no longer employed by the State of Delaware. (D.I. 72 Ex. J at ex. 4) On November 9, 2012, defense counsel advised Davis that Shahin wished to depose her and asked Davis to advise of her availability. (*Id.* at Ex. 5) Davis advised defense counsel that she was available for deposition on December 11, 2012, December 20, 2012, and January 7, 2013. (*Id.*) Shahin scheduled the deposition of Davis to take place on December 13, 2012. (D.I. 72 Ex.

H at 2) There is no indication on the Court docket that Shahin prepared a notice of Davis' deposition.

On three occasions, November 26, 27, and 29, 2012, service of subpoena was attempted on Davis for her to testify at a deposition. (*Id.* at 3-5, Ex. 2) Each time was unsuccessful and the subpoena was returned unexecuted. (*Id.*) On November 30, 2012, prior to the deposition date, Shahin filed the instant motion to hold Davis in contempt pursuant to Fed. R. Civ. P. 45(e). Davis did not appear for the deposition on December 13, 2012. (*Id.* at 7)

Rule 45(e) provides that "[t]he issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Whether to hold a nonparty in contempt under Rule 45(e) is "within the discretion of the Court." *Barnes Found. v. Township of Lower Merion*, 1997 WL 169442, at *5 (E.D. Pa. Apr. 7, 1997). Davis was never served with the subpoena. Nor does it appear that Shahin prepared a notice of deposition for Davis' deposition. While the Court does not countenance efforts to avoid service of a subpoena, sanctions are not warranted here for failure to comply with a subpoena that was never served. Therefore, the Court will deny the motion to hold Davis in contempt (D.I. 56).

B. **Rule 11**

Shahin moves for sanctions (D.I. 77) against defense counsel pursuant to Fed. R. Civ. P. 11(b) on the grounds that counsel misrepresented facts and legal standards. Defendants oppose the motion.

The Court has reviewed Plaintiff's motion and finds it to be frivolous. Defense counsel has taken no action to warrant the imposition of Rule 11 sanctions. Accordingly, the Court will deny the Motion.

## V. SUMMARY JUDGMENT

### A. Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions,

8

conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252. The same standard applies when there are cross-motions for summary judgment. *See Lawrence v. City of Philadelphia, Pa.*, 627 F.3d 299, 310 (3d Cir. 2008).

With respect to summary judgment in a discrimination case, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

**B.     Discussion**

Shahin moves for summary judgment on the grounds that: (1) she has established a prima facie case of discrimination based upon age, national origin, and sex; and (2) Defendants' proffered explanation for the failure to hire her is unworthy of credence. Defendants move for summary judgment on the grounds that: (1) they are immune from claims raised under the ADEA; (2) Shahin has failed to establish a prima facie case of national origin and sex discrimination; (3) Shahin failed to exhaust administrative remedies with regard to the sex discrimination claim; (4) because Shahin chose to pursue her claims in federal court, any claims under Delaware law should be dismissed; and (5) Shahin failed to establish a prima facie case of retaliation.

**1.     Age Discrimination**

Shahin alleges that Defendants discriminated against her on the basis of age, in violation of the ADEA. She seeks damages and injunctive relief. The ADEA includes in its definition of employer "a State or political subdivision of a State and any agency . . . of a state." 29 U.S.C. § 630(b)(2). The Supreme Court has held that, "in the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91 (2000). While the Eleventh Amendment permits suits for prospective injunctive relief against state officials, *see Ex Parte Young*, 209 U.S. 123 (1908), this doctrine "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted).

Shahin filed her suit against the State of Delaware and its Office of Management and Budget. She did not name any state officials. Defendants are immune from suit. Therefore, the Court will grant the motion for summary judgment on the ADEA claim.

### 2. National Origin and Sex Discrimination

Shahin's Title VII claim contends that she was not hired due to her national origin and sex. She seeks summary judgment on the grounds that she established a prima facie case of both national origin and sex discrimination and that Defendants' proffered explanation for the actions they took is unworthy of credence. Defendants seek summary judgment on the grounds that Shahin failed to establish a prima facie case of discrimination and, alternatively, that they have articulated a legitimate, nondiscriminatory reason for selecting the candidate they did.

Shahin has provided no direct evidence of discrimination. Thus, the Court turns to the *McDonnell Douglas* burden-shifting framework. Under this framework, Shahin must first establish a prima facie case of discrimination by proving that: (1) she is a member of a protected class; (2) she sought and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Sarullo v. United States Postal Serv.*, 352 F.3d 789 (3d Cir. 2003); *accord Iyer v. Everson*, 238 F. App'x 834 (3d Cir. Aug. 3, 2007).

If a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant employer to proffer a "legitimate non-discriminatory" reason for its actions. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997). If the defendant meets this burden, the

11

burden again shifts to plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *See McDonnell Douglas*, 411 U.S. at 804.

Here, Shahin alleges that discrimination occurred after she applied for the financial investment program specialist position and was neither interviewed nor hired for the position. However, Shahin has failed to provide sufficient evidence of circumstances supporting an inference of discriminatory action. *See Sarullo*, 352 F.3d at 789-90. It is undisputed that Shahin is a female of Ukrainian origin and that she was not interviewed or hired for the financial investment program specialist position. However, she rests her evidence of discrimination solely upon her own assertion that she was not hired because of her national origin but there is nothing else to support her claim. Indeed, the record does not include any evidence that Defendants were aware of Shahin's or any of the other applicant's national origin. In addition, the record reflects that the decision-makers were all female and that two females were included in the five individuals selected for interview.

Alternatively, even if Shahin could make out a prima facie case of national origin or sex discrimination, she has not produced evidence from which a reasonable juror could find that Defendants' reason for their employment decision was a pretext for discrimination. When a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant-employer to proffer a "legitimate non-discriminatory" reason for its actions. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997). If the defendant meets this burden, the burden again shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *See McDonnell Douglas*, 411 U.S. at 804. To do this, the plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either

(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 537 (3d Cir. Feb. 27, 2006) (internal citations and quotation marks omitted).

Defendants have met their burden by articulating a legitimate, nondiscriminatory reason for not interviewing or hiring Shahin. The successful candidate was hired based upon the determination that he was more suitable and better qualified for the position. In addition, the successful applicant possessed several licenses applicable to the vacant position and, during his career, had performed almost the same functions required in the position for which Defendants were hiring. Nothing before the Court contradicts Defendants' proffered reason for their failure to interview or hire Shahin. Nor is Defendants' proffered reason for their action weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find it unworthy of credence. *See Sarullo*, 352 F.3d at 800. Even construing the evidence in the light most favorable to Shahin, she has provided no evidence from which a fact-finder could either disbelieve Defendants' articulated reason, or believe that a discriminatory reason was more likely than not the cause of the employment action. As there is no genuine dispute on the dispositive legal issue of whether Defendants had a discriminatory motive, the Court will grant Defendants'

motion for summary judgment and will deny Shahin's motion for summary judgment on the issue of sex and national origin employment discrimination.

### 3. Exhaustion

With regard to the sex discrimination claim, summary judgment is also proper because Shahin failed to exhaust her administrative remedies. After a plaintiff files a charge against an employer with the EEOC and subsequently receives a right-to-sue letter, a plaintiff's "ensuing suit [in district court] is limited to claims that are within the scope of the initial administrative charge." *Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 414 (3d Cir. Jan. 20, 2010) (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)). To determine the "scope" of the charge, a court must consider the extent of the investigation that "can reasonably be expected to grow out of the [EEOC] charge[s]." *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978) (internal quotation marks omitted); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) ("[A] district court may assume jurisdiction over additional charges if they are reasonably within the scope of the complainant's original charges."). Accordingly, a plaintiff cannot "greatly expand an investigation simply by alleging new and different facts when" later bringing claims in the district court. *Hicks*, 572 F.2d at 967.

Shahin's charge of discrimination asserts national origin, retaliation, and age discrimination. It makes no mention of sex discrimination, and the sex discrimination claim is raised for the first time in the complaint. Given that the charge of discrimination does not even hint at sex discrimination, it cannot be said that the sex discrimination claim is properly raised in the complaint. Even interpreting Shahin's EEOC charge liberally, a reasonable investigation of

Shahin's charges of national origin, retaliation, and age discrimination would not have encompassed the claim of sex discrimination.

### 4. Retaliation

Shahin alleges that she was not hired by Defendants in retaliation for previously filed charges of discrimination. To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) there was a causal connection between the protected activity and the employer's action. *See LeBoon v. Lancaster Jewish Comty, Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007). Here, no reasonable juror could find for Shahin on the retaliation issue.

There is no evidence that Defendants had knowledge that Shahin had filed a previous charge of discrimination or that hiring decisions were in any way influenced by a prior charge of discrimination. To the extent that Shahin rests her retaliation claim upon her involvement in her spouse's correspondence with the OMB regarding his pension plan, the claim fails. There is no evidence of record that the hiring individuals were aware of any connection between Shahin and Dr. Shahin. Because there is no evidence of a nexus between the filing of a charge of discrimination and Defendants' hiring decision, the retaliation claim fails. Accordingly, the Court will grant Defendant's motion for summary judgment on the retaliation issue and will deny Shahin's motion on the same issue.

### 5. Delaware Discrimination in Employment Act

Defendants move for summary judgment on potential Delaware Discrimination in Employment Act ("DDEA") claims. "Generally, the same evidence required to prevail on a claim under the ADEA is required to prevail on a claim of age discrimination brought under the

15

DDEA." *Alred v. Eli Lilly and Company*, 771 F. Supp.2d 356, 366 (D. Del. 2011); *Lehmann v. Aramark Healthcare Support Svcs., LLC*, 630 F.Supp.2d 388, 391-92 (D. Del. 2009). Assuming that Plaintiff is asserting claims of discrimination under the DDEA – and her complaint does not appear to do so – Defendants are entitled to summary judgment on her DDEA claims for the same reasons they are entitled to summary judgment on the federal discrimination claims.

## VI. CONCLUSION

For the above reasons, the Court will deny Plaintiff's Motion for Summary Judgment (D.I. 71), grant Defendants' Motion for Summary Judgment (D.I. 73), and deny Plaintiff's Motion for Contempt (D.I. 56) and Motion for Sanctions (D.I. 77).

An appropriate Order follows.